No. 43,840

THE STATE OF KANSAS, *Appellee*, v. FLOYD BLOCKYOU, *Appellant*.

(407 P. 2d 519)

Opinion filed November 6, 1965.

*Edgar Dwire*, of Wichita, argued the cause, and *E. L. Malone*, of Wichita, was on the briefs for the appellant.

*Keith Sanborn*, County Attorney, of Wichita, argued the cause, and *Robert C. Londerholm*, Attorney General, and *Richard Seaton*, Assistant Attorney General, both of Topeka, and *R. K. Hollingsworth*, Deputy County Attorney, of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a conviction of manslaughter in the first degree.

The appellant complains of no trial errors but rather bases his charge of improper conviction on a claim of double jeopardy. Only the limited facts necessary to a determination of that issue and related questions will be presented.

The defendant, while engaged in a drunken brawl, attempted to shoot his wife but instead shot a police officer killing him almost instantly. His first prosecution for murder in the first degree resulted in a hung jury. After the jury had deliberated for a long number of hours the trial judge inquired whether they had reached an agreement. They advised the judge that they had not. He then asked whether they would be able to reach a verdict and was answered in the negative by the foreman. He then asked the foreman whether he could see any further point in continuing their

deliberations and the foreman answered, "No, sir." He then inquired of the jury members if any member of the jury thought that they would be able to reach a verdict and no member responded affirmatively. The court then discharged the jury. Thereafter, the defendant was returned to the jail to await a new trial. Before the second trial defendant presented his plea in bar and motion to amend or strike the journal entry. The motion and plea were overruled.

The second trial was had and defendant was convicted of manslaughter in the first degree. The defendant, at the time for sentencing, abandoned his new trial motion and when the court inquired if there was any reason why defendant should not be sentenced, stated there was none. There being no legal cause why sentence should not be pronounced the court sentenced the defendant.

Up to this point defendant had been represented by counsel of his own choosing.

Not quite six months later defendant *pro se* filed his notice of appeal, motion for the record and appointment of counsel which were provided for him. Thereafter, the motion for the production of the transcript of the trial which resulted in a hung jury was presented and overruled. When the matter was presented, and prior to such presentation, the defendant was told that the state would order and pay for any part of the transcript which was deemed relevant but maintained that the transcript of the trial resulting in the hung jury was not relevant to the appeal in the present proceedings.

The notice of appeal states that the defendant appeals from the judgment, sentence and order of commitment rendered in the second trial.

We must admit that it is not without some difficulty that we determine just what issue the defendant is raising on appeal. We are informed in appellant's brief and were again admonished on oral argument that under no circumstances does the appellant want to face the hazard of a new trial. The appellant therefore raises no trial errors. Perhaps the issue presented by appellant's seven questions set out in his brief may be summarized as follows:

Where an indigent defendant desires to appeal from an order denying a plea in abatement based on the manner in which the trial court discharged a hung jury, is he, following a conviction on

a second trial, entitled to a free transcript of the entire trial proceedings of both the first and second trial?

The appellant argues:

"The possible error of double jeopardy is clear from the pleadings of record, so what is appellant's counsel's duty? Is it the duty of appellant's counsel to appeal only on the portion of the record that the prosecution wants to make available? Are other errors concealed in the yet unproduced transcript? How can appellant's counsel designate what parts of the transcript are necessary for this appeal when he knows not what it contains?

"The duty of court appointed appellate counsel is that of an advocate on behalf of the appellant and to provide the appellant with adequate representation. To provide that adequate representation necessitates a complete transcript as a basis for evaluation for the case. *Hardy v. United States, 375 U. S. 277, 281, 282, 11 L. ed. 2d 331, 334, 335, 84 S. Ct. 424.*"

We agree with what was said in *Hardy v. United States,* 375 U. S. 277, 279, 11 L. ed. 2d 331, 84 S. Ct. 424:

"A court-appointed counsel who represents the indigent on appeal gets at public expense, as a minimum, the transcript which is relevant to the points of error assigned. *Coppedge v. United States, supra,* at 446; *Ingram v. United States, supra.* . . ."

However, the trial proceedings in the first trial which resulted in a hung jury become a nullity when the jury is discharged. They are not subject to review by an appellate court. Neither are they matters for consideration in the second trial. The second trial is tried *de novo.*

The only occasion when the proceedings in the first trial would be material would be in connection with such matters as double jeopardy. Then the trial proceedings such as the testimony of the witnesses would have no bearing. The only part of the transcript which would be material would be the proceedings which took place when the jury was discharged. These are made available and are as follows:

"THE COURT: Mr. Foreman, has the Jury reached a verdict?

"JURY FOREMAN (Mr. Albert Crockett): No, Your Honor.

"THE COURT: Do you think you will ever reach one?

"MR. CROCKETT: No, Your Honor.

"THE COURT: Any further point in continuing your deliberations?

"MR. CROCKETT: No, sir.

"THE COURT: Does any member of the Jury think you will ever reach a verdict in this case?

"No Response.

"THE COURT: Very well, the Jury is discharged. Thank you very much for your services."

The Appearance Docket in the office of the Clerk of the District Court bears the following notation:

"Jury deadlocked. Deft. to return to Sedg. Co. Jail pending another trial.
"2-10-63 Hung Jury—discharged 5:10 p. m., 2-18-63."

The journal entry reads in part:

"Thereafter, and on the 18th day of February, 1963, all parties appearing as aforesaid, the Foreman of the jury announced that the jury was deadlocked and that it was not possible for them to arrive at a verdict. Whereupon, the court made a judicial determination that said jury was hopelessly deadlocked; that further deliberations by the jury should be excused.

"WHEREUPON, the Court in the presence of the defendant and his attorney, did excuse the jury from further deliberations and ordered the Sheriff of Sedgwick County, Kansas, to return the defendant to the Sedgwick County Jail until such time as this cause could be set down for another trial."

The state should not be required to subsidize frivolous requests for indigent appellants.

We also believe the plea of former jeopardy was properly overruled. A defendant has not been in jeopardy where his first trial results in a mistrial because the jury cannot agree. (*Struble v. Gnadt,* 164 Kan. 587, 191 P. 2d 179.)

K. S. A. 60-248 (*f*) provides:

"The jury may be discharged by the court . . . after they have been kept together until it satisfactorily appears that there is no probability of their agreeing."

The above section is made applicable to trial of criminal cases by K. S. A. 62-1412.

The length of time a jury should be kept together and the probability of an agreement must be determined by the trial court from the facts and circumstances of the particular case. The existence of inability to agree nullifies any seeming jeopardy, and when the trial court concurs in and affirms the jury's conclusion that it is unable to agree the finding is absolute and conclusive in the absence of abuse of discretion. (*State v. Allen,* 59 Kan. 758, 54 Pac. 1060; *State v. Hager,* 61 Kan. 504, 59 Pac. 1080.)

The appellant suggests that the duty of a court appointed counsel is that of an advocate on behalf of appellant, not that of the state, and that a complete transcript of all proceedings should be demanded.

We agree with appellant's suggestion as to counsel. However, court appointed counsel are not obligated to present frivolous questions to the court or request copies of transcripts which can have

no bearing on the case. If court appointed counsel finds, after diligent investigation, that there is no merit to his client's contentions he is not obligated to stultify his legal integrity in an effort to support them. The Hardy case, *supra*, quoted with approval the rule announced in *Ellis v. United States*, 356 U. S. 674, 675, 2 L. ed. 2d 1060, 78 S. Ct. 974, where it was stated:

". . . If counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may ask to withdraw on that account. If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal [*in forma pauperis*] may be denied."

We find no merit in appellant's contentions.

The judgment is affirmed.

APPROVED BY THE COURT.