(931 P.2d 1258)
No. 73,714

STATE OF KANSAS, *Appellee*, v. JAMES DEWAYNE BURNS, *Appellant*.

Opinion filed January 17, 1997.

*Michael J. Helvey*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Julie McKenna*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before RULON, P.J., MARQUARDT, J., and C. FRED LORENTZ, District Judge, assigned.

LORENTZ, J.: Following an earlier mistrial, defendant James DeWayne Burns was convicted of aggravated indecent liberties with a child. He appeals his conviction.

On the evening of July 16, 1993, Youlanda Young went out with defendant. During the course of the evening, Young and defendant separated, and defendant returned to Young's residence around 2 in the morning.

Richard Murry was baby-sitting Young's two children, including 10-year-old A.C. Murry testified that defendant offered to let him go home, but that Murry decided to stay with the children until Young returned because he did not know defendant very well. Murry fell asleep on the sofa in the living room. Murry awoke to A.C.'s screaming, "Get away from me." Murry proceeded to A.C.'s room and saw defendant standing there. Defendant had been in the living room with Murry before Murry fell asleep. Murry

claimed A.C. appeared frightened, so he brought her into the living room and asked her if defendant had touched her. She told Murry that defendant touched her on her lower part and her chest. Murry asked defendant to leave, and Murry then called the police.

Officer Sean Furbeck of the Salina Police Department was sent to Young's residence. Furbeck testified he met Murry on the driveway and Murry told him he had been baby-sitting for Young and that defendant had touched A.C.'s private parts. Furbeck had Officer Cara Bell take defendant to the police station, and Furbeck then took A.C. to the hospital.

Bell testified that after defendant was given his *Miranda* warning, he waived his rights and told Bell he had gone inside Young's residence and laid down on the bed next to A.C. Defendant stated A.C. was under the sheet and he had laid down on top of the sheet. When asked if he had touched A.C., defendant responded he might have touched A.C. between the legs, but he could not remember because he had blacked out. Defendant said he then woke up to A.C.'s screaming. At trial, defendant denied telling Bell he might have touched A.C. between the legs.

Detective Irvin Augustine testified he interviewed defendant when he was brought to the police station. Defendant told Augustine he had been drinking earlier during the evening and that he had gone to Young's residence at around 2:30 in the morning, where she was supposed to meet him. Defendant also told Augustine he remembered falling asleep in a chair in the living room, and the next thing he recalled was A.C. screaming. Defendant told Augustine he remembered lying on the bed in A.C.'s bedroom and A.C. telling him to get out. When Augustine asked defendant whether he touched A.C., defendant first denied it, but then said he could have. At trial, defendant denied telling Augustine he had laid down in A.C.'s bed.

A.C. claimed she woke up that night because she felt a man touching her breasts, legs, and vagina and that the man put his fingers inside her vagina. The man tried to get on top of her, and she tried to get away and yelled for her baby-sitter. She remembered the man had a mustache but was unable to identify defendant as the man who had touched her.

Dr. Mark Ohlde, the physician who examined A.C., could not find any evidence of penetration of A.C.'s vagina.

Defendant testified he never touched A.C. Defendant stated he met Young at her residence on the evening of July 16, 1993, the two went out, and during the evening he had about 10 to 12 beers. Defendant further testified he returned to Young's residence sometime after 2 in the morning with the understanding Young was going to meet him there. According to defendant, after arriving at Young's residence, he went to sleep on the recliner in the living room and awoke to A.C.'s screaming and went to her room. Defendant further testified that Murry came into the room and ordered defendant to get out.

Defendant was charged in a three-count complaint with rape, aggravated indecent liberties with a child, and aggravated burglary. The aggravated burglary charge was later dismissed, and the remaining charges were contained in an amended complaint.

Defendant's jury trial took place February 8-10, 1994. During the conference regarding the jury instructions, the trial court announced it was persuaded, based on the evidence, that the charges of rape and aggravated indecent liberties were multiplicitous and that aggravated indecent liberties should be instructed on as a lesser included offense of rape. The State objected; however, defendant did not. The trial court proceeded to give a lesser included offense instruction to the jury. After deliberating for a number of hours, the jury announced it could not reach a unanimous verdict and a mistrial was declared.

Affidavits from 5 jurors indicated the final vote of the jury prior to the declaration of mistrial was 11 to 1 in favor of not guilty on the aggravated indecent liberties with a child charge. There were no votes in favor of guilty on the rape charge.

Defendant filed a motion for judgment of acquittal on February 17, 1994, claiming the evidence failed to establish his guilt beyond a reasonable doubt on either charge. The motion was denied. On March 16, 1994, defendant filed a motion to dismiss the rape charge on the ground a retrial violated his right to be protected from double jeopardy. The motion was not heard until a post-trial

setting after the second trial on September 19, 1994. The motion was ultimately denied.

The cause proceeded to a second trial beginning on March 22, 1994. The same jury instructions were given with neither party objecting. Ultimately, the jury found defendant guilty of rape.

A.C.'s testimony at the second trial was inconsistent with her testimony from the first trial. There were differences regarding when she awoke, whether she was awake when the man touched her vagina, and the order in which she was touched.

Following the second trial, defendant filed a motion for new trial and a motion for acquittal. In his motion for new trial, defendant claimed he was placed in double jeopardy by the trial court allowing a second trial on the rape charge. After argument on the two motions, the trial court denied the motion for new trial, finding the jury had been dismissed because of a failure to reach a verdict, and, therefore, double jeopardy did not attach. The trial court then granted defendant's motion for acquittal, finding there was insufficient evidence to support the rape conviction. However, the trial court went on to rule there was overwhelming evidence to convict defendant of the lesser included offense of aggravated indecent liberties and that he should be convicted on that charge.

Defendant first argues his right to be protected from double jeopardy was violated when he was required to go to trial a second time on the charge of rape. Whether defendant's constitutional right was violated is a question of law. "An appellate court's review of a question of law is unlimited." *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against subsequent prosecutions for the same offense. K.S.A. 21-3108 codifies the rules relating to double jeopardy in Kansas. See *State v. McKay*, 217 Kan. 11, 13, 535 P.2d 945 (1975).

K.S.A. 21-3108 states in relevant part:

"(1) A prosecution is barred if the defendant was formerly prosecuted for the same crime, based upon the same facts, if such former prosecution:

. . . .

(c) Was terminated without the consent of the defendant after the defendant had been placed in jeopardy, *except where such termination shall have occurred by reason of:* (i) The illness or death of an indispensable party; or (ii) *the inability of the jury to agree;* or (iii) *the impossibility of the jury arriving at a verdict."* (Emphasis added.)

K.S.A. 22-3423 states in part: "(1) The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because: . . . (d) The jury is unable to agree upon a verdict."

Here, at the close of the first trial, the trial court declared a mistrial because the jury was unable to reach a unanimous verdict and ordered a new trial based on the same charges. Defendant asserts that because the affidavits of five jurors, obtained after the first trial, indicated there were no votes in favor of finding him guilty of rape, he was acquitted on that charge, and a new trial on rape violated his right to be protected from double jeopardy.

In *State v. Blockyou,* 195 Kan. 405, 408, 407 P.2d 519 (1965), our Supreme Court concluded:"A defendant has not been in [double] jeopardy where his first trial results in a mistrial because the jury cannot agree. [Citation omitted.]" *Blockyou* was followed in *State v. McKay,* 217 Kan. at 13, a case which involved facts similar to the present case.

In *McKay,* the defendant was tried twice for second-degree murder. At the conclusion of the first trial, the jury was unable to agree on a verdict, and the trial court declared a mistrial. The jurors stood nine for conviction of voluntary manslaughter and three for involuntary manslaughter. Both of those crimes were lesser offenses of second-degree murder. Affidavits of six jurors revealed the jury had decided defendant was not guilty of second-degree murder. Based on this, defendant filed a motion for a judgment of acquittal as to second-degree murder. The motion was denied, and a second trial was held on the second-degree murder charge. Defendant was convicted of voluntary manslaughter at the second trial and he appealed, claiming he was placed in double jeopardy because the jury in the first trial did not believe he was guilty of second-degree murder. 217 Kan. at 12.

The *McKay* court cited the Judicial Council's notes regarding K.S.A. 22-3423, which state: " 'A properly ordered mistrial does not prevent a subsequent trial on the same charge, even though the order is made after the defendant has been placed in jeopardy.' " 217 Kan at 13.

Here, because the first trial ended with a hung jury, the trial court had statutory authority to declare a mistrial. Furthermore, under K.S.A. 21-3108, a new prosecution on the same charge was proper.

Defendant next argues it was error for the trial court to instruct that aggravated indecent liberties with a child was a lesser included offense of rape. Defendant was charged in separate counts with both offenses in the amended complaint.

"The charging document is the jurisdictional instrument which gives the court authority to convict a defendant of crimes charged in the complaint or of the lesser included crimes thereof. Conversely, if a crime is not specifically stated in the information or is not a lesser included offense of the crime charged, the district court lacks jurisdiction to convict a defendant of the crime, regardless of the evidence presented. [Citation omitted.]" *State v. Horn*, 20 Kan. App. 2d 689, 692, 892 P.2d 513, *rev. denied* 257 Kan. 1095 (1995).

At the jury instruction conference during the first trial, the trial court determined it would be multiplicitous to instruct the jury on both rape and aggravated indecent liberties with a child.

"[M]ultiplicity is 'the charging of a single offense in several counts of a complaint or information.' *State v. Freeman*, 236 Kan. 274, 280, 689 P.2d 885 (1984). The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the double jeopardy clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. *State v. Edwards*, 250 Kan. 320, 329, 826 P.2d 1355 (1992)." *State v. Eastridge*, 20 Kan. App. 2d 973, 975, 894 P.2d 243 (1995).

At the first trial, the trial court decided to instruct the jury that aggravated indecent liberties with a child was a lesser included offense of rape, reasoning that fondling and embracing would occur prior to the actual rape or sexual intercourse. Although arguably the trial court's reasoning was erroneous, if its ruling is correct for other reasons, the result will not be set aside on appeal. "When the trial court reaches the correct result based upon the wrong

reason, this court will affirm the trial court." *Cabral v. State*, 19 Kan. App. 2d 456, Syl. ¶ 9, 871 P.2d 1285, *rev. denied* 255 Kan. 1000 (1994).

During the first trial, the State objected to the lesser included offense instruction, claiming the charges were based on separate occurrences and were not multiplicitous. Defendant made no objection. The trial court gave the instruction as a lesser included offense, over the objection of the State. At the second trial, the same instructions were given; however, neither party objected.

" '[N]o party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds for the objection, unless the instruction is clearly erroneous. K.S.A. 22-3414(3). An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there is a real possibility the jury would have returned a different verdict. [Citation omitted.]' " *State v. DePriest*, 258 Kan. 596, 605, 907 P.2d 868 (1995).

In order to determine whether the instruction was clearly erroneous, this court must determine whether aggravated indecent liberties with a child is a lesser included offense of rape. This is a question of law, and this court's review is de novo. See *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1.

K.S.A. 21-3107 provides in part:

"(2) Upon prosecution for a crime, the defendant may be convicted of *either the crime charged or an included crime*, but not both. An included crime may be any of the following:
(a) A lesser degree of the same crime;
(b) an attempt to commit the crime charged;
(c) an attempt to commit a lesser degree of the crime charged; or
(d) a crime necessarily proved if the crime charged were proved." (Emphasis added.)

We conclude that (2)(d) above is the only subsection which applies in the instant case.

K.S.A. 21-3504 provides:

"(a) Aggravated indecent liberties with a child is:
. . . .
(3) engaging in any of the following acts with a child who is under 14 years of age:

(A) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both."

K.S.A. 21-3502(a) provides that "[r]ape is: . . . (2) sexual intercourse with a child who is under 14 years of age." K.S.A. 21-3501(1) defines "sexual intercourse" for purposes of rape to include: "any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse."

As was previously noted, the evidence at trial included a statement from A.C. that she felt a man touching her breasts, legs, and vagina and that he put his fingers inside her vagina.

"In cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced." K.S.A. 21-3107(3).

"In determining whether a lesser crime is a lesser included offense under K.S.A. 21-3107(2)(d), a two-step analysis or two-pronged test has been adopted. The first step is to determine whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged. If so, the lesser crime is a lesser included crime of the crime charged. Under the second prong of the test, even if the statutory elements of the lesser crime are not all included in the statutory elements of the crime charged, the lesser crime may still be a lesser included crime under K.S.A. 21-3107(2)(d) if the factual allegations of the charging document and the evidence required to be adduced at trial in order to prove the crime charged would also necessarily prove the lesser crime. *State v. Fike*, 243 Kan. 365, Syl. ¶ 1, 757 P.2d 724 (1988)." *State v. Berberich*, 248 Kan. 854, 857, 811 P.2d 1192 (1991).

Under the first prong of *Fike*, indecent liberties contains the elements of lewd fondling or touching and intent to arouse or satisfy the sexual desires of the child or the offender or both. These elements are not specifically included in the rape statute. Under the second prong of *Fike*, the evidence required at trial in order to prove rape is sexual intercourse, which by definition includes penetration of the female sex organ by a finger. In order to have "sexual intercourse," contact would be necessary and under the facts of this case involving penetration by a finger, that contact could obviously be considered "lewd fondling or touching." Under

the facts adduced in this case, once the elements of rape were proved, the crime of aggravated indecent liberties was also necessarily proved.

We are convinced the trial court was correct under the facts of this case in finding aggravated indecent liberties with a child was a lesser included offense of rape.

Following the conclusion of the second trial, defendant filed a motion for acquittal, claiming the evidence was insufficient to convict him of rape. The trial court concluded the evidence was insufficient to support a conviction of rape and granted defendant's motion. But, the trial court went on to find the evidence was overwhelming to convict defendant of the lesser included charge of aggravated indecent liberties with a child. The trial court then entered judgment convicting defendant of that charge.

Defendant, for his final contention, argues the trial court did not have authority to acquit him of rape and then convict him of a different charge. In support of his argument, defendant cites K.S.A. 22-3419(3), arguing such statute grants the court the power to acquit and does not authorize modification of a verdict.

K.S.A. 22-3419(3) states in relevant part:

"If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within seven days after the jury is discharged or within such further time as the court may fix during the seven-day period. *If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal.* It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury." (Emphasis added.)

Although no Kansas cases have dealt directly with the trial court's power to modify a jury's verdict on a greater offense to a lesser included offense, Kansas courts have held that when "a defendant has been convicted of a greater offense, but the evidence only supports a lesser included offense, the case must be remanded to resentence the defendant for conviction of the lesser included offense. [Citations omitted.]" *State v. Kingsley,* 252 Kan. 761, 782, 851 P.2d 370 (1993). See also *State v. Ferris,* 19 Kan. App. 2d 180, 184-85, 865 P.2d 1058 (1993).

Federal courts have more directly addressed the specific question presented. In *Government of Virgin Islands v. Josiah*, 641 F.2d 1103, 1108 (3d Cir. 1981), the government appealed a postverdict judgment of acquittal seeking entry of judgments of conviction on a lesser included offense after the jury had found the defendant guilty of the greater offense. The court held:

"[A] lesser-included offense consists of some of the elements of the greater offense and does not require the proof of any element not present in the greater offense. [Citation omitted.] A trial court therefore has authority to enter a judgment of conviction on a lesser-included offense when it finds that an element exclusive to the greater offense is not supported by evidence sufficient to sustain the jury's finding of guilty on the greater offense. [Citations omitted.]" 641 F.2d at 1108.

The court in *United States v. LoRusso*, 695 F.2d 45 (2d Cir. 1982), *cert. denied* 460 U.S. 1070 (1983), cited favorably to *Josiah* in its opinion. *LoRusso* involved a somewhat different issue. In that case, the defendant was charged with possession with intent to distribute heroin. At the close of the government's case, the defendant moved for judgment of acquittal, and the trial court found there was no evidence that defendant had intended to distribute the heroin in his possession. The government moved to have the court submit a charge of simple possession without intent to distribute to the jury as a lesser included offense. 695 F.2d at 50. The defendant contended the modification of the charge was an "impermissible variance in the indictment" and the court had no power to submit the lesser included offense. 695 F.2d at 52. The Third Circuit Court of Appeals stated that under Fed. R. Crim. Proc. 31(c), which provides that a defendant may be found guilty of an offense necessarily included in the offense charged, the trial judge may instruct the jury it may find the defendant guilty of either the greater or lesser offense, and if the jury returns a verdict of guilty on the greater offense, it may enter a judgment of guilty on the greater offense, it may enter a judgment of guilty on the lesser offense alone or, prior to submitting the case to the jury, the trial judge may decide to submit only the lesser offense. 695 F.2d at 52. We note that under federal law only the identity of the elements test is used for determining when a crime is a lesser included offense of a greater crime. However, even though Kansas has a more

expansive view of the definition of what constitutes a lesser included crime, the federal cases are nevertheless persuasive.

Adopting the rationale from *Josiah* and *LoRusso*, we conclude that when a trial court determines the evidence in a jury trial is insufficient to support the jury's verdict convicting a defendant of an offense, but that same evidence does support a conviction of a lesser included offense, the trial court may acquit the defendant of the greater offense and enter judgment convicting the defendant on the lesser included offense.

Here, defendant was convicted by the jury of rape, and under the special facts of the case the jury must have necessarily found that a lewd fondling or touching occurred. The trial court had proper authority when it acquitted defendant of the greater offense of rape to enter judgment convicting him of the lesser included offense of aggravated indecent liberties with a child.

Affirmed.